The **UNITED STATES** of America,
Plaintiff,

v.

**Clarence J. GISI**, doing business as Clarence J. Gisi Grain Company, et al.,
Defendants.

**Civ. A. No. 6557.**

United States District Court
D. Colorado.

Dec. 20, 1962.

Arthur L. Fine, Asst. U. S. Atty., and Rogers N. Robinson, Atty., U. S. Dept. of Agriculture, Denver, Colo., for plaintiff.

Leland M. Coulter, Aurora, Colo., for defendant Clarence J. Gisi.

Kenneth M. Wormwood, of Wormwood, O'Dell & Wolvington, Denver, Colo., and Glenn S. Thompson, Yuma, Colo., for defendant Gerald Gisi individually and as ex'r of estate of Michael Gisi, decd.

CHILSON, District Judge.

This matter came on for trial to the Court on the 20th day of December, 1962, upon an agreed statement of facts. The

Court hereby adopts the agreed statement of facts as the findings of fact of this Court.

From the agreed statement of facts it appears that the defendant Clarence J. Gisi entered into agreements to store grain for the Commodity Credit Corporation. To insure the faithful performance of the obligations of Clarence J. Gisi, several surety bonds were executed. The bond here involved was executed by Clarence J. Gisi as principal and the National Surety Corporation as surety, with Commodity Credit Corporation as the obligee, in the principal amount of $69,300.

Clarence J. Gisi, together with Mike and Gerald Gisi, executed an agreement to indemnify National Surety Corporation from loss thereon.

The Commodity Credit Corporation is an agency of the United States Government.

In June, 1957, the United States commenced in this Court Civil Action No. 5715 against Clarence J. Gisi, the National Surety Corporation and others, for the failure of Clarence J. Gisi to deliver grain in accordance with his agreements with the Commodity Credit Corporation and for judgment against National Surety Corporation on the bond.

National Surety Corporation filed a third party complaint against Clarence, Mike and Gerald Gisi as indemnitors on the bond.

In August, 1959, judgment was entered in favor of the United States and against National Surety Corporation on this and other similar bonds in the amount of $146,500, which judgment was satisfied in September, 1959. In August, 1960, National Surety obtained a judgment on its third party complaint against Gerald Gisi as Executor of the Estate of Mike Gisi, and Gerald Gisi individually in the amount of $50,603.98. In September, 1960, Mike and Gerald Gisi paid the sum of $40,000 in satisfaction of this judgment.

In the meantime and in March, 1959, Mike and Gerald Gisi, anticipating their liability as indemnitors, instituted Civil Action No. 3603 in the District Court of Washington County, Colorado, against Clarence J. Gisi, alleging an agreement by Clarence to exonerate Mike and Gerald from any liability they might incur as indemnitors on the bond. On May 8, 1959, a default judgment was obtained by Mike and Gerald against Clarence in the amount of $69,000.

Thereafter and on October 2, 1959, the United States instituted this action to restrain the payment or collection of the state court judgment and for an adjudication of whether or not the state court judgment was subordinate to the unpaid portion of the claim of the United States against Clarence.

At a pretrial conference held in October, 1960, counsel agreed that the sole issue left for determination in this case is whether the United States' right to the collection of any amounts which might be adjudged due it from Clarence J. Gisi in Civil Action No. 5715 is superior to the rights of Gerald Gisi and the Estate of Mike Gisi to enforce the state court judgment, and whether or not the state court judgment is held in constructive trust by Gerald and Mike's Estate for the use and benefit of the United States.

On October 24, 1962, in Civil Action No. 5715 in this Court, a judgment was obtained by the United States against Clarence J. Gisi in the amount of $236,662.50, and no part of this judgment has been paid by the judgment debtor.

Thus we have the situation that Clarence J. Gisi, by a breach of his agreements with Commodity Credit Corporation, became indebted to the United States. A portion of this indebtedness was covered by surety bonds, one of which was the bond of National Surety Corporation here in question. National Surety has discharged the obligation under the bond. The indemnitors have discharged their obligation to National Surety and now seek to recover from the assets of Clarence J. Gisi the amount they paid National Surety.

At the same time, the United States seeks to recover from the assets of Clarence J. Gisi the amount over and above that recovered on the surety bonds.

The United States claims that Gerald and Mike's Estate are not entitled to recover from Clarence until Clarence's obligation to the United States has been paid in full.

Gerald and Mike's Estate claim that the United States is entitled to no priority and that the state court judgment obtained by Mike and Gerald is enforceable irrespective of whether or not the United States has recovered in full the indebtedness due it from Clarence.

■ It needs no citation of authority to identify the general rule that a surety, by payment of its obligation, is subrogated to the rights of the obligee of the bond against the principal. In other words, National Surety Corporation, upon payment of its obligation upon the bond, became subrogated to the rights of the United States against Clarence to the extent of that payment. Among these rights which the United States had against Clarence Gisi is the right to sue him, obtain judgment and enforce collection.

Defendants Mike and Gerald contend that as indemnitors they had the same rights as the surety. This is not questioned by the United States, and we will assume that this is a correct statement of the law.

However, the Government contends that the surety's right of subrogation, that is, the right to proceed to recover its loss from Clarence, does not exist where the surety's payment only discharges a part of the claim, and that until the Government's claim against Clarence is discharged in full, the surety cannot enforce its claim against Clarence.

The Government further contends that the indemnitors of the surety, that is, Mike and Gerald, have no greater rights to assert their claim against Clarence than National Surety.

■ The authorities support the Government's position.

■ The general rule is that in order that the surety may have subrogation the debt must be fully paid, and although the surety has paid the entire amount for which it is liable, it is not entitled to be subrogated to rights which are held to enforce payment of other sums which remain unpaid. See 83 C.J.S. Subrogation § 48a(3), page 672; Restatement of the Law of Security, § 141, page 383.

This general rule has been applied by the United States Supreme Court in a number of cases, American Surety Company of New York v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663; American Surety Company of New York v. Westinghouse Electric, 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105; Prudence Realization Corporation v. Ferris, 323 U.S. 650, at 658, 65 S.Ct. 539, at page 542, 89 L.Ed. 528 (concurring opinion); Prudence Realization Corporation v. Geist, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293; Jenkins v. National Surety Company, 277 U.S. 258, 48 S.Ct. 445, 72 L.Ed. 874.

That this same rule applies to one who is in the position of an indemnitor rather than a surety was determined in Jenkins v. National Surety Company, 277 U.S. 258, at page 267, 48 S.Ct. 445, at page 446, supra, wherein the Court stated:

"The rule would go for naught if, by claiming indemnity instead of subrogation, the surety could achieve the same result. * * *

"Wherever equitable principles are called in play, as they preeminently are in determining the rights and liabilities of sureties and in the distribution of insolvents' estates, they likewise forbid the surety to secure by independent contract with the debtor indemnity at the expense of the creditor whose claim he has undertaken to secure."

The defendants, in their brief, cited 31 United States Code Annotated §§ 191 and 193, which read as follows:

§ 191:

"Whenever any person indebted to the United States is insolvent, or

whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

§ *193:*

"Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

Defendants then state:

"It will be seen from Section 193 that the surety company is subrogated to the rights of the United States on any money paid under a bond and it is the contention of these defendants that as indemnitors they had the same right of priority as the surety did and had."

A similar contention was made in United States v. National Surety Company, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143. At the time of this opinion (1920)

§ 191 was § 3466 and § 193 was § 3468 of the Revised Statutes. In that case the loss to the Government was $13,000, of which the surety's liability was $3150. The surety claimed that it was entitled to share in the distribution from the debtor's bankrupt estate pro rata on an equality with the Government. The court said:

"The priority secured to the United States by § 3466 (31 U.S.C.A. § 191) is priority over all other creditors; that is, private persons and other public bodies. This priority the surety obtains upon discharging its obligation. But what the surety asks here is not to enjoy like priority over such other creditors, but equality with the United States, a creditor whose debt it partly secured. To accord such equality would abridge the priority expressly conferred upon the Government. While the priority given the surety by the statute attaches as soon as the obligation upon the bond is discharged, it cannot ripen into enjoyment unless or until the whole debt due the United States is satisfied. This result is in harmony with a familiar rule of the law of subrogation under which a surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied."

The Court concludes as a matter of law that the defendants, Gerald Gisi individually and Gerald Gisi as the Executor of the Estate of Mike Gisi, Deceased, are not entitled to enforce the judgment obtained by them in the state court against Clarence J. Gisi unless and until the judgment obtained by the United States in Civil Action No. 5715 in this Court has been paid or otherwise satisfied in full.

The Court further concludes that the United States is entitled to an order and decree enjoining Gerald Gisi and Gerald Gisi as Executor of the Estate of Mike Gisi, Deceased, and all persons claiming by, through or under them, or either

of them, from taking any action or initiating any procedure for the collection of the judgment obtained in the state district court, or from receiving anything of value in payment or satisfaction of said judgment or any part thereof, unless and until the judgment entered in favor of the United States and against Clarence J. Gisi in Civil Action No. 5715 in this Court has been satisfied in full, or until the further order of the Court herein.

The Court further concludes as a matter of law that the United States is entitled to an order and decree enjoining the defendant Clarence J. Gisi from satisfying said judgment or any part thereof by payment of money, delivery of property or otherwise, unless and until the judgment entered in Civil Action No. 5715 in this Court against the defendant Clarence J. Gisi has been satisfied in full, or until the further order of the Court herein.

The Court further concludes as a matter of law that the judgment in the state district court is not held by Gerald Gisi and Gerald Gisi as Executor of the Estate of Mike Gisi, Deceased, in constructive trust for the use and benefit of the United States.

The Court further concludes as a matter of law that the plaintiff is entitled to judgment for its costs herein expended to be taxed by the Clerk of the Court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendants Gerald Gisi and Gerald Gisi as Executor of the Estate of Mike Gisi, Deceased, and all persons claiming by, through or under them or either of them, be and they are hereby enjoined from taking any action or initiating any procedure for the collection of the judgment against Clarence J. Gisi entered in Civil Action No. 3603 in the District Court of Washington County, Colorado, and from receiving anything of value in payment or satisfaction of said judgment or any part thereof, unless and until the judgment entered in favor of the United States and against Clarence J. Gisi in Civil Action No. 5715 in this Court has

been satisfied in full, or until the further order of the Court herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant Clarence J. Gisi be and he is hereby enjoined from satisfying in whole or in part the judgment entered in Civil Action No. 3603 in the District Court of Washington County, Colorado, by payment of money, delivery of property, or otherwise, unless and until the judgment entered against him in Civil Action No. 5715 in this Court has been satisfied in full, or until the further order of the Court herein.

IT IS FURTHER ORDERED that the plaintiff shall have judgment for its costs herein expended to be taxed by the Clerk of this Court.